| B104 (Rev. 2/92) | ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Dennis Etzkorn, Trustee 261 Oliver Street Realty Trust | Christopher Long |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Arlene Beth Marcus 77 Franklin Boston, MA 02110 | Gary Cruikshank 21 Custom House St, # 920 Boston, MA 02110 |

PARTY (Check one box only)   ☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☐ 3 U.S. NOT A PARTY

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Objection to Discharge

AUG 03 '05 AM 11:49 USB

FILING FEE PAID

### NATURE OF SUIT
(Check the one most appropriate box only.)

- ☐ 454 To recover money or property
- ☐ 455 To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan
- ☐ 456 To obtain a declaratory judgment relating to any of the foregoing causes of action
- ☐ 435 To determine validity, priority, or extent of a lien or other interest in property
- ☒ 426 To determine the dischargeability of a debt 11 U.S.C. § 523
- ☐ 459 To determine a claim or cause of action removed to a bankruptcy court
- ☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property
- ☐ 434 To obtain an injunction or other equitable relief
- ☐ 498 Other (specify)
- ☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan
- ☐ 424 To object or to revoke a discharge 11 U.S.C. § 727

| ORIGIN OF PROCEEDINGS (Check one box only.) | ☒ 1 Original Proceeding | ☐ 2 Removed Proceeding | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another Bankruptcy Court | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| DEMAND | NEAREST THOUSAND $ 150,000 | OTHER RELIEF SOUGHT | ☐ JURY DEMAND |
|---|---|---|---|

### BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | BANKRUPTCY CASE NO. |
|---|---|
| Christopher Long | 05 13885 rs |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| MA | Boston | Somma |

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| Dennis Etzkorn, Trustee | Christopher Long | |

| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|

FILING FEE (Check one box only.)   ☐ FEE ATTACHED   ☐ FEE NOT REQUIRED   ☐ FEE IS DEFERRED

| DATE | PRINT NAME | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|
| 8/3/05 | Arlene Beth Marcus | Arlene Beth Marcus |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

AUG 03 '05 AM 11:43 USBC

| | |
|---|---|
| IN RE: CHRISTOPHER LONG )<br>)<br>Debtor. )<br>) | CHAPTER 7<br>CASE NO. 0513885rs |
| DENNIS ETZKORN, Trustee, )<br>261 Oliver Street Realty Trust, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CHRISTOPHER LONG, )<br>)<br>Defendant. )<br>) | Adversary Proceeding<br>No. |

## COMPLAINT OBJECTING TO DISCHARGE

### Jurisdiction

This Court has jurisdiction of this action, and this Complaint is filed pursuant to, the provisions of 11 U.S.C. §§523 and 727.

### Parties

1. Dennis Etzkorn is the Trustee of the 261 Oliver Street Realty Trust, (hereinafter "Etzkorn") of 261 Oliver Street, Fall River, Bristol County, Massachusetts.

2. The Debtor, Christopher Long (hereinafter "the Debtor"), is a resident of Fall River, MA.

### Statement of Facts

3. The Debtor brought an action in 1999 as counsel for, and on behalf of, Susan Silvia, Louis Aguiar and Fall River Assisted Living Center in an action in Bristol County, Massachusetts against Etzkorn's predecessor Trustee of the 261 Oliver Street Realty Trust (hereinafter the "Trust") and others. (the "1999 Litigation").

4. In or about February 18, 2000, Etzkorn became sole Trustee of the Trust.

5. During the end of May and/or the beginning of June, 2000, but prior to June 5, 2000, Etzkorn as Trustee on the one side, and John Silvia, Clerk of FRLAC and the agent for Silvia and Aguiar on the other, negotiated a settlement of the 1999 Litigation as between them without the participation of their respective counsel of record.

6. On June 5, 2000, an Agreement was signed by Etzkorn and the Debtor's clients in the 1999 Litigation setting forth the terms of the settlement between Etzkorn and the Debtor's clients.

7. No mention was made in the June 5, 2000 Agreement of any obligation of Etzkorn as Trustee to pay any attorneys' fees of the Debtor's clients in the 1999 Action or of any reservation of rights by the Debtor's clients to seek any attorneys' fees from Etzkorn.

8. On June 15, 2000, Etzkorn and the Debtor's clients all signed a revised settlement Agreement as between them in the 1999 Litigation. Although paragraph 1 of the June 15th Agreement was different from paragraph 1 of the June 5th Agreement, the changes pertained solely to the method for applying payments, not the amounts owed.

9. There was no addition in the June 15th Agreement of any obligation on the part of Etzkorn to pay any of the attorneys' fees for the Debtor's clients in the 1999 Litigation nor was there any reservation of rights of the Debtor's clients to seek an order from the Court for the payment of fees.

10. On June 22, 2000, the Debtor and Attorney Blake Godbout, who was counsel of record for all of the Defendants in the 1999 Litigation, including the Trust, met at the offices of the Debtor. Godbout, however, was, in June of 2000, representing one of the predecessor Trustees of the Trust against Etzkorn in an action brought by Etzkorn against the predecessor Trustee in

2

AUG03'05 AM11:43 USB

relation to the Trust. The Debtor had actual knowledge of the litigation between Etzkorn and his predecessor Trustee and of Godbout's representation of the predecessor Trustee in that action.

11. Godbout had not participated in, nor been privy to, the negotiation, drafting or execution of the June 5th or June 15th Agreements between the Debtor's clients and Etzkorn.

12. Prior to June 22, 2000, the date that the Agreement for Judgment was entered, the Debtor had had no conversations with Attorney Godbout concerning payment of the Debtor's fees.

13. The Debtor had discussed payment of fees directly with Etzkorn and Etzkorn had informed the Debtor that Etzkorn would not agree to the payment of any of the Debtor's clients' attorneys fees as part of the settlement of the 1999 Litigation.

14. The Debtor and Godbout executed a Stipulation of Dismissal on behalf of all of the Defendants in the 1999 Litigation with the exception of Etzkorn and executed an Agreement for Judgment on behalf of the Debtor's clients and Etzkorn.

15. At the time, Godbout was authorized to execute the Agreement for Judgment on behalf of Etzkorn solely to the extent of the June 15, 2000 settlement Agreement but was not authorized to agree to the payment to the Debtor of the Debtor's clients' attorneys fees or to agree to any terms and conditions in the Agreement for Judgment which exceeded the terms and conditions of the June 15th settlement Agreement.

16. The words "See 'Agreement' dated June 15, 2000, attached hereto and incorporated by reference" were expressly included in the Agreement for Judgment.

17. The Debtor requested that Godbout provide a written statement setting forth Godbout's authority to execute the Agreement for Judgment on behalf of Etzkorn.

18. Godbout executed and delivered to the Debtor a handwritten statement of Godbout's authority to sign the Agreement for Judgment on behalf of Etzkorn. In that statement, Godbout

3

expressly stated that he had authority "to execute said document in conformance to the so-called 'Agreement' executed by Trustee Dennis Etzkorn on June 15, 2000."

19. The Debtor never requested that Godbout provide a written statement specifying that Godbout was authorized to include payment by Etzkorn of attorney's fees to the Debtor in the Agreement for Judgment.

20. The Debtor never requested that Godbout provide a written statement specifying that Godbout was authorized to include the sum of $100,000 for attorney's fees to the Debtor to be paid by Etzkorn.

21. The dollar figure in the Agreement for Judgment was inserted by the Debtor.

22. Although the June 15th Settlement Agreement contained no obligation on behalf of Etzkorn to pay the Debtor's clients' attorneys fees or any reservation of rights to claim said fees from Etzkorn, and no reference was made to payment of attorneys fees in the text of the Agreement for Judgment, when the Debtor inserted a dollar amount in the Agreement for Judgment, he inserted an amount which exceeded the maximum exposure of Etzkorn under the June 15th settlement Agreement by $100,000.

23. The extra $100,000 included by the Debtor in the Agreement for Judgment was specifically inserted by him in order to pay himself $100,000 as attorneys fees.

24. The June 15th settlement Agreement included provisions other than provisions for payments by Etzkorn. For example, Etzkorn agreed to defend certain claims of third parties against the Debtor's clients. The maximum exposure of Etzkorn under the June 15th settlement Agreement could be calculated only by determining the maximum exposure of the Debtor's clients on the third party claims. The Debtor calculated the amount which he would include as attorney's fees based upon a percentage of the maximum exposure of Etzkorn under the

4

settlement Agreement including Etzkorn's maximum exposure on the third party actions against the Debtor's clients which Etzkorn had agreed to assume and defend.

25. Godbout was not informed by the Debtor that the dollar amount inserted in the Agreement for Judgment was over and above the maximum exposure of Etzkorn under the terms of the June 15th Agreement which was attached to the Agreement for Judgment and expressly incorporated therein by reference as the controlling Agreement.

26. Attorney Godbout was not informed by the Debtor, at the time that Godbout signed the Agreement for Judgment on behalf of Etzkorn, that the dollar amount inserted in the Agreement for Judgment included $100,000 for payment to the Debtor of attorneys fees or that those fees were based upon a calculation by the Debtor of a percentage of the maximum exposure of Etzkorn under the June 15th settlement Agreement.

27. Godbout was not aware, and could not have made himself aware by reading the June 15th settlement Agreement, that the dollar amount inserted by the Debtor in the Agreement for Judgment included payment of the Debtor's clients' attorneys fees or that the dollar amount had been increased by $100,000 over the maximum exposure of Etzkorn under the settlement Agreement since (a) no reference was made to the payment of the Debtor's clients' attorneys fees or the increase in the dollar amount over and above the terms of the settlement Agreement in the express terms of the Agreement for Judgment and (b) the June 15th settlement Agreement, expressly incorporated into the Agreement for Judgment contained (i) no obligation on the part of Etzkorn to pay the Debtor's clients' attorneys' fees and (ii) non-monetary obligations on the part of Etzkorn, the maximum exposure of which could not be determined simply by reviewing the June 15th settlement Agreement.

5

28. Upon learning of the inclusion in the Agreement for Judgment of an amount to pay the Debtor for the Debtor's clients' attorneys' fees, Etzkorn contacted John Silvia, who was the Husband of Susan Silvia, the president of Fall River Assisted Living Center, and the person with whom Etzkorn had negotiated the June 5th and June 15th settlement Agreements, and objected to the inclusion of any fees in the Agreement for Judgment and subsequent Execution.

29. John Silvia subsequently acknowledged in writing that unless the June 15th Agreement expressly provided for payment of the Debtor's clients' attorney's fees Etzkorn was not liable for the payment of any such fees.

30. In April of 2002, Etzkorn arranged to refinance the Trust property. As part of that refinancing, Etzkorn was required by his lender to obtain a Certificate of Judgment from the Court reflecting that the Agreement for Judgment in the 1999 Litigation had been satisfied in full and was no longer an encumbrance on the Trust's property.

31. Although Etzkorn was able to enter into an agreement with the Debtor's clients in the 1999 Litigation in full satisfaction of the terms of the June 15th Agreement, the Debtor and his clients refused to provide the Execution in the 1999 Litigation endorsed "Satisfied in Full" unless and until Etzkorn paid the Debtor the sum of $100,000 in attorneys' fees and an additional $22,000 in "interest".

32. The Debtor and his clients finally agreed to allow the refinancing to proceed and to endorse the Agreement for Judgment as "Satisfied in Full" but if and only if Etzkorn agreed to escrow $100,000 until such time as the Debtor's claim that Etzkorn was obligated to pay him a percentage fee of at least $100,000 could be adjudicated.

33. Even assuming that the June 15th Settlement Agreement and/or the Agreement for Judgment could be interpreted to include a valid attorney's fees provision, the Debtor had no contingent fee agreement with his clients.

34. Even assuming that the June 15th Settlement Agreement and/or the Agreement for Judgment could be interpreted to include a valid attorney's fees provision, the Debtor's clients had no agreement with Etzkorn or his predecessor Trustees to pay a percentage attorney's fees for any action brought by the Debtor's clients against the Trust.

35. Even assuming that the June 15th settlement Agreement and/or the Agreement for Judgment could be interpreted to include a valid attorney's fees provision, those fees would be limited to reasonable attorney's fees incurred in collecting on only those obligations underlying the 1999 Litigation which were contractual and for which the underlying contract expressly obligated Etzkorn to pay reasonable attorney's fees to the Debtor's clients.

36. Even assuming that the June 15th Settlement Agreement and/or the Agreement for Judgment could be interpreted to include a valid attorney's fees provision, the Debtor's written time records reflect substantially less than $10,000 of time and expenses expended by him in relation to the matters for which he now seeks payment from Etzkorn of $100,000.

37. As a result of the facts set forth in paragraphs 1 through 36 above, Etzkorn has incurred damages for which the Debtor is liable to Etzkorn.

## STATEMENT OF CLAIM

### I

As a result of the facts set forth in paragraphs 1 through 37 above, the Debtor is liable to Etzkorn for debts for money, property or services obtained by false pretenses, false

7

representations or actual fraud for which there is an exception to discharge of the Debtor pursuant to 11 U.S.C. §523(a), subsection (2).

AUG03'05 AM11:44 USB

II

As a result of the facts set forth in paragraphs 1 through 37 above, the Debtor is liable to Etzkorn for debts for fraud or defalcatioin while acting in a fiduciary capacity, embezzlement, or larceny for which there is an exception to discharge of the Debtor pursuant to 11 U.S.C. §523(a), subsection (4).

III.

As a result of the facts set forth in paragraphs 1 through 37 the Debtor is liable to Etzkorn for debts for willful and malicious injury by the Debtor to Etzkorn or to Etzkorn's property for which there is an exception to discharge of the Debtor pursuant to 11 U.S.C. §523(a), subsection (6).

Requests For Relief

WHEREFORE, Dennis Etzkorn, Trustee of the 261 Oliver Street Realty Trust, requests that the Court:

1.     Pursuant to 11 U.S.C. §523(a)(2), except from any discharge granted to the Debtor, all debts and judgment amounts, including costs, interest and attorneys' fees, owed to Etzkorn by the Debtor as may be determined in the action of Etzkorn v. Aguiar, Bristol Superior Court CA No. 02-00577;

2.     Pursuant to 11 U.S.C. §523(a)(4), except from any discharge granted to the Debtor, all debts and judgment amounts, including costs, interest and attorneys' fees, owed to Etzkorn by the Debtor as may be determined in the action of Etzkorn v. Aguiar, Bristol Superior Court CA No. 02-00577;



AUG 03'05 AM 11:44 USB

3. Pursuant to 11 U.S.C. §523(a)(6), except from any discharge granted to the Debtor, all debts and judgment amounts, including costs, interest and attorneys' fees, owed to Etzkorn by the Debtor as may be determined in the action of <u>Etzkorn v. Aguiar</u>, Bristol Superior Court CA No. 02-00577;

4. Order the immediate release to Etzkorn of all funds, including accrued interest thereon, being held in escrow by the Debtor and counsel for Etzkorn; and,

5. Enter whatever additional relief this Court deems appropriate.

DENNIS ETZKORN, Trustee
By his attorney,

Arlene Beth Marcus
77 Franklin Street
Boston, MA 02110
(617) 723-2525

Dated: Aug 3, 2005

9



UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: CHRISTOPHER LONG )<br>)<br>Debtor. )<br>) | CHAPTER 7<br>CASE NO. 0513885rs |
| DENNIS ETZKORN, Trustee, )<br>261 Oliver Street Realty Trust, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CHRISTOPHER LONG, )<br>)<br>Defendant. )<br>) | Adversary Proceeding<br>No. |

**CERTIFICATE OF SERVICE**

I, Arlene Beth Marcus, hereby certify that a copy of the foregoing Complaint Objecting to Discharge was served upon counsel for the following parties by mailing copies of same, first class mail, postage pre-paid to each below listed counsel on August 3, 2005:

Kenneth Walton, Esq.
Donavan Hatem, LLP
Two Seaport Lane
Boston, MA 02110
Attorney for Blake Godbout

James L. Kimball, Esq.
Blake J. Godbout & Associates
33 Broad Street
Boston, MA 02109
Attorney for Blake Godbout

Kevin Buck, Esq. AUG 03'05 AM 11:43 USB
Linnehan & Buck
15 Court Square
Boston, MA 02108
Attorney for Louis F. Aguiar, Susan C. Silvia, and
Fall River Assisted Living Center, Inc.
a/k/a Fall River Assisted Living, Inc.

Gary W. Cruickshank, Esq.
Law Office of Gary W. Cruickshank
21 Custom House Street
Suite 920
Boston, MA 02110
Counsel for the Debtor

Stephen J. Duggan, Esq.
Lynch & Lynch
45 Bristol Drive
South Easton, MA 02375
Attorney for Christopher Long (Debtor)

Carolyn Bankowski, Esq.
Deutsch, Williams, Brooks, DeRensis and Hollan
99 Summer Street
Boston, MA 02110
Chapter 7 Trustee

_____
Arlene Beth Marcus
77 Franklin Street
Boston, MA 02110
(617) 723-2525

Dated: August 3, 2005